UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JANE DOE (J.T.),<br><br>Plaintiff,<br><br>v.<br><br>COLONIAL HOSPITALITY, LLC D/B/A BEST WESTERN ORLANDO EAST; VILLAGE INN MOTEL & RV PARK, INC.; STARWOOD CAPITAL GROUP MANAGEMENT, LLC D/B/A CRESTWOOD SUITES; ESA P PORTFOLIO L.L.C. D/B/A CROSSLANDS ORLANDO; AVISTA PROPERTIES XVII, LLC D/B/A DAYS INN & SUITES ORLANDO EAST UCF AREA, WYNDHAM HOTEL GROUP, LLC, DAYS INNS WORLDWIDE, INC., and WYNDHAM HOTELS & RESORTS, INC.,<br><br>Defendants. | CASE NO.: 6:25-cv-1629 |

**DEFENDANT, ESA P PORTFOLIO LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

COMES NOW Defendant, ESA P PORTFOLIO L.L.C. ("ESA") and, moves this Court, pursuant to Fed. R. Civ P. 12(b)(6), for the entry of an Order dismissing

1

the Complaint filed herein by the Plaintiff, JANE DOE (J.T.) ("Plaintiff") and, in support thereof, submits the following Memorandum of Law:

## INTRODUCTION

Plaintiff alleges that, over the course of several years, she was intermittently trafficked at ESA's various hotels. And, in a rather transparent attempt to avoid the applicable statute of limitations ("SOL"), Plaintiff alleges that her last day of trafficking at *all* of these properties was August 25, 2015 – exactly ten years before she filed the present lawsuit. Because Plaintiff's contention of being trafficked everywhere at once is facially implausible, it should be rejected. The remaining allegations establish that Plaintiff's claims accrued outside the limitations period, and, on that basis alone, this Court should dismiss Plaintiff's Complaint.

Plaintiff's claim fails for other reasons as well. The overwhelming majority of the allegations offered in support of Plaintiff's claims are conclusory in nature, irrelevant to her cause of action against ESA, or both. Indeed, Plaintiff's Complaint contains references to third-party publications addressing the evils of sex trafficking, averments directed at the hotel industry in general, and recitations to on-line articles unrelated to Plaintiff, her trafficker, or even the subject premises. Meanwhile, the scant few contentions which relate specifically to Plaintiff's alleged time at ESA hotels fail to satisfy the well-known elements of a civil claim for beneficiary liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA"). In summary, Plaintiff provides no particular facts to establish that she was trafficked at an ESA hotel, that there was any relationship between ESA and her trafficker, or that ESA

possessed constructive knowledge of trafficking, as opposed to other illicit activity (such as prostitution). It is well settled, however, that a claimant must establish that she was criminally sex trafficked, that a viable claim must demonstrate a relationship between the trafficker and defendant, and that the TVPRA does not speak to commercial sex generally. Therefore, ESA respectfully requests that this Court grant its Motion to Dismiss and enter an Order dismissing Plaintiff's Complaint for failure to state a claim.

## PLAINTIFF'S ALLEGATIONS

Plaintiff's Complaint includes dozens of allegations related generally to sex trafficking and the phenomena of sex trafficking within the hospitality industry at large. Plaintiff's factual allegations *which pertain to her time at the ESA Hotel*, however, are limited to the following:

1. Plaintiff contends that she was trafficked by unidentified traffickers from 2012 to August 25, 2014, and that, off and on during this timeframe, she was trafficked out of various hotels. *ECF 1*, ¶¶ 68, 106, 140, 198, 235. In regard to ESA specifically, Plaintiff alleges that she was trafficked at the ESA Hotel "[d]uring the end of 2014 – August 25, 2015". *Id.*, ¶ 235.

2. Plaintiff does not contend that she was exclusively at the ESA Hotel from late 2014 to August 25, 2015. Rather, she claims that she "and her trafficker(s)" stayed at the ESA Hotel for "multiple weeks" during this timeframe. *Id.*, ¶ 236. Plaintiff also claims to have been trafficked at other locations during this same timeframe, staying

3

at these other locations for days or weeks at a time. *Id.*, ¶¶ 68-69, 106-07, 140-41, 198-99.

3. Plaintiff alleges that, during her stays at the ESA Hotel, "[t]here was a frequent and continuous flow of males, who were not guests of the hotel, in and out of the room that Plaintiff occupied after brief stays." *Id.*, ¶ 240.

4. Plaintiff claims that the rooms she occupied during her stays "contained evidence of trafficking and drug use, including used condoms in the trashcan, drug paraphernalia and residue on surfaces in [the] room, used needles in plain sight, blood spatter on walls and floors …" *Id.*, ¶ 245. However, Plaintiff also alleges that "[h]ousekeeping services were not offered". *Id.* Thus, these items would only have been observable after Plaintiff had checked out.

5. Plaintiff claims that she used drugs in her hotel room, and that such drug use would have gave off a distinct and pungent odor. *Id.*, ¶ 246.

6. Plaintiff alleges that "room occupants", including her, were often high on crack and/or heroin, and that their mannerisms would be noticeable when seen around the hotel. *Id.*, ¶¶ 247-48.

7. Plaintiff contends that she "and her trafficker(s) were placed in the 'back' of the hotel with the others engaged in drug activity and commercial sex". *Id.*, ¶ 250.

8. Plaintiff alleges that she would walk in front of the ESA Hotel wearing skimpy clothing until a car would stop; she would then escort her customer "past the front office" and up to her room, where the two would engage in commercial sex acts. *Id.*, ¶ 251. The man would leave and then Plaintiff would repeat the process. *Id.*

4

Plaintiff does not specifically contend that ESA employees saw her "walking" in front of the hotel. Rather, she claims that the Hotel's front desk "had a clear view of the road". *Id.*, ¶ 252.

9.  Plaintiff does not allege that her trafficker ever interacted with the ESA Hotel staff. She claims that "[t]he hotel rooms were never in the trafficker's name; rather, he usually paid an addict to put the room in his name for the night and paid that person in drugs." *Id.*, ¶ 254. Thus, "different person[s]" (*i.e.,* someone other than Plaintiff's trafficker) paid for the rooms and actually transacted business with the Hotel. *Id.*, ¶¶ 254-55.

10.  Plaintiff alleges that she was "regularly beaten by her trafficker and was covered in visible bruises on her body while at the [Hotel]." *Id.*, ¶ 330. Plaintiff makes this exact same allegation against the other Defendants. Plaintiff does not allege that anyone from ESA observed Plaintiff's trafficker abuse or mistreat her (or even interact with her).

11.  Plaintiff alleges "that she was found to be a victim of human trafficking by a Florida Court", but she offers no facts connecting that determination to her time at the ESA Hotel. *Id.*, ¶ 14. She also contends that her "former trafficker(s) were extremely violent, using physical abuse and threats of abuse as a means to force Plaintiff's compliance with their demands." *Id.*, ¶ 16. She does not, however, claim that those demands were to engage in commercial sex at the ESA Hotel.

12.  In fact, though she makes conclusory allegations that she was "trafficked" at the ESA Hotel, nowhere in Plaintiff's Complaint does she actually

5

allege that her trafficker caused her to engage in commercial sex at the ESA Hotel through threats, force, fraud or coercion.

## ARGUMENT

***A.    Plaintiff's Claim Against ESA is Untimely and, Therefore, Must be Dismissed.***

Plaintiff asserts a single claim against ESA – one for "beneficiary liability" under 18 U.S.C. § 1595 of the TVPRA. *Id.*, Count IV, ¶¶ 324-39. The SOL applicable to said claim is ten years; it provides that "no action may be maintained under subsection (a) unless it is commenced not later than the later of ten years after the cause of action arose; or (2) ten years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense." 18 U.S.C. § 1595(c). Plaintiff was an adult at the time she was trafficked (ECF 1, ¶ 12). Accordingly, because her Complaint was filed on August 25, 2025, Plaintiff's claim must have accrued on or after August 25, 2015, to be timely.[1]

Plaintiff obviously recognizes the importance of this August 25, 2015, date – as she rather impossibly alleges that she was trafficked ***at every Defendants' premises on this specific date***. *ECF 1*, ¶¶ 68, 106, 140, 198, 235. Said allegations, however, are in direct conflict with each other – Plaintiff simply cannot have been trafficked at every location on the same day. Accordingly, Plaintiff's contention that she was trafficked at the ESA Hotel on August 25, 2015, need not be accepted as true. After all, in order

---

[1] "Under [Rule 6(a)(1)], when a [SOL] is measured in years, the last day for instituting the action is the anniversary date of the relevant act." *Ferrante v. Rexroat*, No. 1:20-cv-92-MW-GRJ, 2021 WL 4464440, *3 (N.D. Fla. July 29, 2021).

to survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim "that is plausible on its face." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). And, while that is a fairly low bar, a plaintiff cannot rely upon "[g]eneralizations, conclusory allegations, blanket statements, and implications" to clear it. *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1268 (M.D. Ala. 2019) (internal cites omitted). Accordingly, when Plaintiff's inherently contradictory and implausible allegations are set aside, Plaintiff's remaining averments demonstrate that her trafficking at the ESA Hotel occurred *before* August 25, 2015, and her claim is untimely.

Likely anticipating ESA would raise a SOL defense, Plaintiff preemptively asserts an equitable tolling argument in her Complaint. *ECF 1*, ¶¶ 264-275. Plaintiff claims that she "was prevented from pursuing her claims prior to August 25, 2015, due to the coercive control exercised by her traffickers and the continuing effects of severe trauma." *Id.*, ¶ 266. But, equitable tolling is only appropriate "when a movant untimely files because of extraordinary circumstances that are both beyond [her] control ***and unavoidable even with diligence***." *Ferrante*, 2021 WL 4464440, *3 (citing *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)). Thus, where a SOL is tolled for a period of time for extraordinary circumstances, but sufficient time for filing remains in the limitation period once those circumstances are removed, the SOL cannot be extended. As the Seventh Circuit has noted:

> We do not think equitable tolling should bring about an automatic extension for the statute of limitations by the

7

> length of the tolling period or any other definite term. It is, after all, an equitable doctrine. It gives the plaintiff extra time if [she] needs it. If [she] doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations. Statutes of limitations are not arbitrary obstacle to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose.

*Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir. 1990). "When … the necessary information is gathered after the claim arose but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within the statutory period and should have done so." *Id.* Thus, if a plaintiff, using reasonable diligence, could have initiated her action prior to the expiration of the SOL, equitable tolling does not apply. *See Valencia v. E*Trade Securities, LLC*, No. 1:21-CV-939-MHC, 2021 WL 9385892, *4 (N.D. Ga. Oct. 22, 2021); *Rashid v. Mukasey*, 533 F.3d 127, 132-33 (2nd Cir. 2008); *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020); *Abena v. Metropolitan Life Ins. Co.*, 544 F.3d 880, 884 (7th Cir. 2008).

Here, Plaintiff alleges that the extraordinary circumstances which prevented her from filing within the SOL persisted up to August 15, 2015. *ECF 1*, ¶ 266. This means that Plaintiff waited 3,649 days before filing her Complaint (*i.e.,* one day short of a full ten years). Plaintiff's Complaint contains no averments which explain how, in using reasonable diligence, she was unable to file within this timeframe. Accordingly, the equitable tolling doctrine cannot same Plaintiff's claim.[2]

---

[2] ESA would argue in the alternative that, even if Plaintiff were trafficked at the ESA Hotel on August 25, 2015, the portion of her claim which is based on any prior instances of trafficking at its premises should nevertheless be dismissed. *See H.G. v. Inter-Continental Hotels*

B.   *The Scope of Civil Claims Under the TVPRA.*

Among other things, and in very general terms, the TVPRA makes sex trafficking a crime and establishes civil causes of action where victims of the criminal offense of sex trafficking can recover against those who engaged in or benefitted from their trafficking.³ It is important at the outset of our analysis, however, to take note of what the TVPRA does *not* address, because doing so reveals a fundamental misunderstanding of the scope of the Act which permeates Plaintiff's Complaint.

First, as it is relevant to Plaintiff's claims herein, the TVPRA applies only sex trafficking; it does *not* address prostitution or commercial sex generally.⁴ As more fully

---

*Corp.*, 489 F. Supp. 3d 697, 710 (fn. 7) (E.D. Mich. 2020) (where the plaintiff claimed that trafficking had occurred both greater and lesser than ten years prior to the filing of her complaint, the Court held that the portion of her TVPRA claims related to the events occurring more than ten years ago were untimely); *Lundstrom v. Choice Hotels International, Inc.*, No. 21-CV-00619-PAB-SKC, 2021 WL 5579117, at *10 (D. Colo. Nov. 30, 2021) (noting that, even if plaintiff had successfully alleged the elements of a TVPRA claim, "the portions of her claims resting on trafficking prior to March 2, 2011 (ten years prior to the filing of her complaint) would be time barred."); *K.A. v. 26th St. Hosp.*, LLP, No. 1:23-CV-092, 2024 WL 2112480, at *8 (D.N.D. Apr. 15, 2024) (same).

³ Sex trafficking is defined at 18 U.S.C. § 1591(a), and it occurs whenever someone "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person .. knowing … that means of force, threats or force, fraud, coercion … or any combination of such means will be used to cause the person to engage in a commercial sex act …"  Coercion is further defined as "threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of the legal process."  18 U.S.C. § 1591(e)(2).

⁴ *See, e.g.*, *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-CV-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 940 (D. Or. 2020); *B.J. v. G6 Hospitality, LLC*, No. 22-CV-03765-MMC, 2023 WL 3569979, at *6 (N.D. Cal. May 19, 2023); *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, 2024 WL 631482, at *4 (E.D.N.C. Feb. 13, 2024).

discussed in the sections below, this simple truth means that Plaintiff's allegations are deficient, but, as an initial matter, it also highlights that the false equivalence between prostitution and trafficking (which Plaintiff makes repeatedly throughout her Complaint) is fundamentally at odds with the TVPRA. *ECF 1*, ¶¶ 43, 237, 250.

Second, while it permits redress where a defendant engages in culpable behavior specific to a particular plaintiff, the TVPRA does ***not*** impose any duty to investigate or prevent possible sex trafficking.[5] In other words, the TVPRA does not establish some federal premises liability cause of action, whereby one can sue property owners for failing to use reasonable care to guard against a generally foreseeable harm. Yet, Plaintiff's Complaint reads as though the Act does just that. Plaintiff repeatedly contends that ESA's liability should be based upon its failures to deter sex trafficking, as opposed to its participation in a venture and its direct or constructive knowledge regarding Plaintiff's trafficking. *Id.*, ¶¶ 224-25, 228-31. Once again, however, Plaintiff's attempt to expand upon the scope of the TVPRA must be rejected. ESA's liability under the TVPRA can only be defined by the elements of the claims set forth

---

[5] *Doe (L.M.)*, 2024 WL 631482, at * 7 (holding that that the TVPRA imposes no duty to "exercise reasonable diligence to proactively investigate and prevent possible sex trafficking."); *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) ("[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking."); *A.D. v. Wyndham Hotels and Resorts, Inc.*, No. _____, 2020 WL 8674205, *5 (E.D. Va. July 22, 2020) ('[T]he Court declines to find that hotels participate in a sex trafficking venture through a general failure to adequately educate and train staff, adopt polies, and implement protocols and procedures that reduce or eliminate sex trafficking on their properties.").

in the statute, and, as noted below, those elements have not been sufficiently pled herein.

C. *Plaintiff Has Not Sufficiently Plead that She Was Sex Trafficked, and She Is Therefore Unable to Bring Any Claim under the TVPRA.*

Under the TVPRA, a sex trafficking victim can bring a civil claim against those who traffic her ("perpetrator liability") or those who financially benefit from her trafficking ("beneficiary liability"), and Plaintiff asserts only the latter type of claim herein. 18 U.S.C. § 1595(a). *ECF 1*, ¶¶ 324-39. However, before one can bring any civil claim under the TVPRA, she must first be a victim of the criminal offense of sex trafficking – *i.e.,* she was caused to engage in a commercial sex act through "force, threats of force, fraud, coercion … or any combination of such means …" 18 U.S.C. §§ 1591, 1595; *see also Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-0915-B, 2024 WL 1337379, at *10 (N.D. Tex. March 28, 2024) (noting that, "as a threshold matter" for a TVPRA claim, a plaintiff must sufficiently plead that "she is a 'victim' of a § 1591 violation."). This initial criteria for the civil causes of action established under the TVPRA is not often discussed, but it cannot be overlooked. And, like any other essential element, a plaintiff's failure to sufficiently plead it requires dismissal.

As the Court is no doubt aware, the pleading standard set forth in Fed. R. Civ. P. 8 does not call for excruciating detail. However, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal cites omitted). Accordingly, allegations that are merely "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action

11

will not do." *Id.* A claimant must plead more than "naked assertions devoid of further factual enhancement." *Id.*; *see also Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2026) ("We take the well-pleased factual allegations in the complaint as true, but we do not credit conclusory allegations or allegations that merely restate the legal elements of a claim").

Here, regarding her allegations that she was trafficked, Plaintiff alleges:

- She "was found to be a victim of human trafficking by a Florida Court when she was granted a human trafficking expungement." *ECF 1*, ¶ 13.

- She assigns the word trafficking and traffickers to her ESA-specific contentions, such as "Plaintiff was trafficked at [the ESA Hotel]" and "Plaintiff and her trafficker(s) stayed at the [ESA Hotel] for multiple weeks at a time". *Id.*, ¶¶ 235-36.

- She makes several general allegations that "she is a human trafficking victim", that her trafficker "recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, and/or solicited [her]", and that she "was engaging in commercial sex acts at [ESA] through force, threats of force, and coercion." *Id.*, ¶¶ 327-29.

In these allegations, Plaintiff's claim that she was a trafficking victim is nothing more than: "I was a victim of sex trafficking, because I was a victim of sex trafficking." Clearly, such averments do not advance beyond a recitation of titles and terms used within the statutory language and therefore "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (internal cite omitted).[6]

---

[6] Other jurisdictions, when faced with similar conclusory allegations of victimhood have found them to be insufficient to support a claim for relief under the TVPRA. For example, the Eastern District of North Carolina recently found that a plaintiff's bare recital to § 1591 "as the pertinent underlying criminal conduct" and her "conclusory invocation of force" (*i.e.,* that she was "forced to have repeated visits from sex buyers") were insufficient to establish

Having failed to sufficiently plead the threshold element of a claim under the TVPRA, Plaintiff's Complaint must be dismissed.[7]

D. *Plaintiff's "beneficiary" claim is deficient, because she does not allege facts sufficient to demonstrate that ESA participated in a venture that it knew or should have known was engaged in trafficking her.*

Under 18 U.S.C. § 1595(a), "[a]n individual who is a victim of a violation of [the criminal provisions of the TVPRA] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the] chapter)." As the Eleventh Circuit Court of Appeals established in *Doe #1 v. Red Roof Inns, Inc.*,

> to state a beneficiary claim under Section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

21 F.4th at 726.

---

that she had been trafficked. *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, 2024 WL 631482, at *3-4 (E.D.N.C. Feb. 13, 2024).

[7] Admittedly, Plaintiff also alleges that her trafficker "used her drug addiction and the threat of causing her harm by becoming 'dope sick' to threaten and coerce her to engage in commercial sex." *ECF 1*, ¶ 331. ESA nevertheless contends that this averment, which is identical to allegations made against the other Defendants (*Id.*, ¶¶ 283, 299, 315, 349) lacks any specific facts showing how her drug use was used against her or how such coercion is tied to her alleged trafficking at ESA.

13

      1.    <u>Plaintiff has failed to establish that Defendants participated in a common undertaking or enterprise involving risk and potential profit</u>.

Participation in a venture has been further defined as "taking part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 725-26 Participation in a venture requires a showing that the defendant and the trafficker were somehow "working together 'to force [plaintiff] to serve their business objective.'" *K.H. v. Riti, Inc.*, No. 1:22-cv-03404-MHC, 2024 WL 505063, *3 (11th Cir. Feb. 9, 2024) (citing *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2024)); *see also J.K. v. Ramada Worldwide, Inc.*, No. 1:23-CV-108-TWT, 2023 WL 5621913, *2 (N.D. Ga. Aug. 30, 2023).[8] While participation in a venture does not require the defendant to have criminally violated the statute, it is important to realize that "observing something is not the same as participating in it." *Red Roof*, 21 F.4th at 727. Allegations that a defendant simply benefitted from renting a hotel room while the defendant should have been aware of trafficking are not sufficient to satisfy this element; rather, such contentions are simply a re-alleging of elements one and three. *See G.W. v. Northbrook Indus., Inc., d/b/a United Inn & Suites*, No. 1:20-cv-05232-JPB, 2024 WL 3166083, *5 (N.D. Ga. June 14, 2024) ("It is not enough for the purposes of the participation prong that United knew of should have known that sex trafficking was

---

[8] Allegations that would potentially satisfy the "participation in a venture" prong include evidence that the trafficker and defendant spoke openly about "getting this thing going again" (*Ricchio*, 853 F.3d at 555), allegations that defendant continually renewed its business relationship for two distinct periods of time, separated by 14 months, after being made aware of trafficking (*J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1318 (N.D. Ga. 2022)), and allegations that hotel staff zip-tied the strike bar on a hotel exit door open so those wishing to buy sex could enter and exit (*J.K.*, 2023 WL 5621913 at *3).

14

occurring on its property. For participation liability to attach under §1595(a), Plaintiff must show more than United's knowledge of the illicit activity and its rental of rooms to Plaintiff's traffickers."). A "plaintiff must connect the dots between the defendant's and the trafficker's actions and show how the defendant participated in the venture with the traffickers." *Id.*

Courts in other circuits have defined this element as requiring allegations that the defendant rendered "culpable assistance to a wrongdoer," manifesting "a desire to promote the wrongful venture's success." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023). Such "culpable assistance" can be sufficiently alleged by showing "a continuous business relationship" sufficient to establish a "tacit agreement" between the defendant and the trafficker. *Id.*; *see also J.B. v. G6 Hospitality, LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, *9 (N.D. Cal. Aug. 20, 2020) ("[I]n the absence of direct association," participation in a venture "required 'a showing of a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement.'").

Here, Plaintiff has not alleged any of that. Plaintiff contends that she was trafficked at the ESA Hotel from late 2014 to sometime in 2015, but she does not say how often or for how long. Plaintiff does *not* make any contention that her trafficker had any dealings with ESA. A close review of Plaintiff's allegations which are specific to her time on at the ESA Hotel premises reveals that she never claims that her trafficker ever colluded with – or even interacted with – ESA staff. Indeed, Plaintiff

15

even asserts that her trafficker had someone else book the room. *ECF 1*, ¶¶ 254-55. Thus, Plaintiff's Complaint is devoid of any allegations "connecting the dots" and establishing a relationship between Plaintiff's trafficker and ESA staff or that ESA took steps to advance that relationship. Therefore, Plaintiff's TVPRA claim is insufficiently pled and must be dismissed.

    2.    <u>Plaintiff failed to establish that ESA had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to Plaintiff.</u>

Turning to the final element of Plaintiff's beneficiary claim, two points are of utmost importance. First, a "complaint must contain facts sufficient to establish that the defendant knew or should have known about the trafficking of the plaintiff in particular – not about trafficking occurring on the premises in general." *Doe #9*, 2021 WL 1186333, at *1 (citing *E.S. v. Vest W. Int'l, Inc.*, No. 3:20-CV-00050-M, 2021 WL 37457, at *5 (N.D. Tex. Jan. 4, 2021)). Put differently, "the relevant knowledge for purposes of a § 1595 claim is the participant's knowledge with respect to the specific act in violation of § 1591 that the plaintiff is suing on." *Doe (S.M.A.)*, 2024 WL 1337370, at *16.[9] Second, as discussed above, the TVPRA does not address commercial sex generally. *See fn 4*, above. Thus, allegations which might be sufficient to establish a defendant's constructive knowledge of prostitution or some other

---

[9] *See also J.L v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) (allegations that defendant was on notice about the prevalence of sex trafficking generally at its hotels was not sufficient to show that defendant "should have known about what happened to this plaintiff."); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (S.D.N.Y. 2020) (noting that § 1595(a) requires constructive knowledge of a singular act (*i.e.,* the venture has engaged in an act), and, thus, knowledge of a general sex trafficking problem is insufficient).

criminal conduct are insufficient to demonstrate that the defendant knew or should have known of trafficking. *Id.* Applying these principles to the Plaintiff's Complaint demonstrates that she has failed to sufficiently plead the constructive knowledge element of her Beneficiary Claim.

Plaintiff contends that ESA possessed actual or constructive knowledge of trafficking which was wholly unrelated to Plaintiff. For example, she contends that ESA, as part of the hotel industry, knew that sex trafficking took place at hotels (*ECF 1*, ¶¶ 33-50) and, on information and belief, that ESA was generally aware that incidents of trafficking or prostitution had previously occurred on its property properties (*Id.*, ¶¶ 227-34). Such allegations, however, do nothing to establish that ESA knew or should have known that Plaintiff was being trafficked.

The few allegations in Plaintiff's Complaint which relate to her time at ESA fare no better. As noted above, Plaintiff's allegations that she was made to engage in commercial sex at the ESA through force, threats of force, fraud or coercion are patently conclusory in nature. And, while her claim that she was coerced through threats of getting "dope sick" lacks any specific facts tying those threats to her time at ESA, Plaintiff also offers no allegations as to how ESA would have been aware of this particular method of coercion.

In addition, none of her ESA-specific allegations establish actual or constructive knowledge of that Plaintiff was being trafficked, as opposed to engaging in other illegal activity. For example, Plaintiff alleges that her hotel room was frequented by males who would visit for brief periods of time, that she would "walk" in front of the Hotel

in immodest dress, and that she would accompany her "johns" back to her room. *ECF 1*, ¶ 240, 251. While, if observed, such activity might indicate prostitution or some other illegal activity, it cannot establish constructive knowledge that Plaintiff was being forced to engage in commercial sex. Indeed, Plaintiff very clearly alleges that other illegal activity was ongoing – she states that she was continually doing drugs while at the Hotel. *Id.*, ¶ 246. But, constructive notice of drug use is not sufficient to support a claim under the TVPRA. Plaintiff does not allege that the staff at the ESA Hotel ever witnessed her trafficker control, abuse, mistreat *or even interact* with her.

Plaintiff may attempt to argue that certain facts (such as a high number of males going in and out of her room) can be indicative of prostitution *as well as* trafficking. Any such argument should be rejected. Liability under the TVPRA is not based upon whether a defendant correctly guesses whether certain "signs" or "red flags" were related to drug use, prostitution, trafficking or even legal activity. Rather, it is Plaintiff's obligation to plead facts establishing constructive notice *of sex trafficking*. "Where alleged conduct has 'two possible explanations, only one of which can be true and only of which results in liability … [s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true." ***B.J.***, 2023 WL 3569979, at *6. Here, like in ***B.J.***, "the requisite 'something more' is missing", and, without it, the Plaintiff "has not plausibly established [ESA's] actual or constructive knowledge of [its] participation in a TVPRA-violating venture." *Id.*

18

## CONCLUSION

Based on the above, Defendant, ESA P PORTFOLIO L.L.C. respectfully requests this Court grant its Rule 12(b)(6) Motion to Dismiss and enter an order dismissing Plaintiff's Complaint, with prejudice.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01

The undersigned counsel hereby certifies that, on September 18, 2025, she contacted counsel for the Plaintiff, in compliance with her obligations under Local Rule 3.01(g) and was advised that Plaintiff intends to oppose this Motion.

Respectfully submitted this 18th day of September, 2025.

**WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC**

*/s/ Lauren E. Dupuis*
Lauren E. Dupuis, Esq.
Florida Bar No.: 1064972
3350 Virginia Street, Suite 500
Miami, Florida 33133
Phone: (305) 455-9500
Fax:   (305)-455-9501
Email: CByrd@wwhgd.com
        SMashelkar@wwhgd.com
        PMoore@wwhgd.com
        RGray@wwhgd.com
        LDupuis@wwhgd.com
        ATratarou@wwhgd.com
*Counsel for ESA P PORTFOLIO L.L.C.*

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served upon all counsel of record via the Court's e-filing system on September 18, 2025.

/s/  *Lauren E. Dupuis*
Lauren E. Dupuis